

**Fw: Activity in Case 0:19-mj-06091-BSS USA v. Nezat Notice of Criminal Transfer**

OHSDdb_InterDistrictTransfer    to: Arthur Hill                    02/27/2019 01:27 PM
Sent by: Scott Lang

| From: | OHSDdb_InterDistrictTransfer/OHSD/06/USCOURTS |
|-------|----------------------------------------------|
| To:   | Arthur Hill/OHSD/06/USCOURTS@USCOURTS        |
| Sent by: | Scott Lang/OHSD/06/USCOURTS                |

see below. thanks.
----- Forwarded by Scott Lang/OHSD/06/USCOURTS on 02/27/2019 01:27 PM -----

| From: | cmecfautosender@flsd.uscourts.gov |
|-------|-----------------------------------|
| To:   | flsd_cmecf_notice@flsd.uscourts.gov, |
| Date: | 02/27/2019 12:52 PM |
| Subject: | Activity in Case 0:19-mj-06091-BSS USA v. Nezat Notice of Criminal Transfer |

**This is an automatic e-mail message generated by the CM/ECF system. Please DO NOT RESPOND to this e-mail because the mail box is unattended.**
**\*\*\*NOTE TO PUBLIC ACCESS USERS\*\*\* Judicial Conference of the United States policy permits attorneys of record and parties in a case (including pro se litigants) to receive one free electronic copy of all documents filed electronically, if receipt is required by law or directed by the filer. PACER access fees apply to all other users. To avoid later charges, download a copy of each document during this first viewing. However, if the referenced document is a transcript, the free copy and 30 page limit do not apply.**

**U.S. District Court**

**Southern District of Florida**

**Notice of Electronic Filing**

The following transaction was entered on 2/27/2019 at 12:52 PM EST and filed on 2/27/2019

| **Case Name:** | USA v. Nezat |
|----------------|--------------|
| **Case Number:** | 0:19-mj-06091-BSS |
| **Filer:** | |
| **Document Number:** | 5 |

**Docket Text:**
**Notice of Criminal Transfer to SD/Ohio of a Rule 5 or Rule 32 Initial Appearance as to Seth Nezat. Your case number is: 1:18cr109. Docket sheet and documents attached. If you require certified copies of any documents, please call our Records Section at 305-523-5210. _Attention Receiving Court_: If you wish to**

*designate a different email address for future transfers, send your request to TXND at: InterDistrictTransfer_TXND@txnd.uscourts.gov.* **(dd)**

**0:19-mj-06091-BSS-1 Notice has been electronically mailed to:**

Noticing FPD-FTL     ftl_ecf@fd.org

Bruce Brown     bruce.brown2@usdoj.gov, CaseView.ECF@usdoj.gov, gloria.hope@usdoj.gov

**0:19-mj-06091-BSS-1 Notice has not been delivered electronically to those listed below and will be provided by other means. For further assistance, please contact our Help Desk at 1-888-318-2260.:**

The following document(s) are associated with this transaction:

**Document description:**Main Document
**Original filename:**n/a
**Electronic document Stamp:**
[STAMP dcecfStamp_ID=1105629215 [Date=2/27/2019]
[FileNumber=18540532-
0]
[365b6c83dc327460db29af841ec7c65d5c6b2d77fc52256f8734688a94ffb20603
3eb82d2ee70fa708ac769ef7ae2d40b8e41e7b443b3576e1b20c8e3b353dc4]]

AO 94 (Rev. 8/97) Commitment to Another District

# UNITED STATES DISTRICT COURT

SOUTHERN      District of      FLORIDA

| UNITED STATES OF AMERICA<br>vs.<br>SETH NEZAT, | **COMMITMENT TO ANOTHER DISTRICT** |
|---|---|
| | 19-6091-SELTZER |

| DOCKET NUMBER | | MAGISTRATE JUDGE CASE NUMBER | |
|---|---|---|---|
| District of Arrest | District of Offense | District of Arrest | District of Offense |
| SOUTHERN DISTRICT OF OHIO | 1:18-CR-109 | SOUTHERN DISTRICT OF FLORIDA | 19-6091-SELTZER |

**CHARGES AGAINST THE DEFENDANT ARE BASED UPON AN**

     X Indictment     ☐ Information     ☐ Complaint     ☐ PETITION

charging a violation of  18        **U.S.C. § 1962(d)**

**DISTRICT OF OFFENSE:**

SOUTHERN DISTRICT OF OHIO (WESTERN DIVISION)

**CONSPIRACY TO PARTICIPATE IN RACKETEERING ACTIVITY**

**CURRENT BOND STATUS:**

☐ Bail fixed at          and conditions were not met
☐ Government moved for detention and defendant detained after hearing in District of Arrest
☒ Government moved for detention and defendant detained pending detention hearing in District of Offense
☐ Other (specify)

**Representation:** ☐ Retained Own Counsel    Federal Defender Organization    ☐ CJA Attorney    ☐ None

**Interpreter Required?**   ☐ No      Yes    Language:   ENGLISH

**SOUTHERN DISTRICT OF FLORIDA**

TO: THE UNITED STATES MARSHAL

     You are hereby commanded to take custody of the above named defendant and to transport that defendant with a certified copy of this commitment forthwith to the district of offense as specified above and there deliver the defendant to the United States Marshal for that District or to some other officer authorized to receive the defendant.

FEBRUARY 27 2019

Date                          United States Judge or Magistrate Judge

**RETURN**

This commitment was received and executed as follows:

| DATE COMMITMENT ORDER RECEIVED | PLACE OF COMMITMENT | DATE DEFENDANT COMMITTED |
|---|---|---|
| | | |
| DATE | UNITED STATES MARSHAL | (BY) DEPUTY MARSHAL |
| | | |

# UNITED STATES DISTRICT COURT
### FOR THE

## SOUTHERN DISTRICT OF FLORIDA

Case No: 19-6091-SELTZER
Your Case No:1:18-CR-109

**United States of America**

vs

## WAIVER OF REMOVAL HEARING

**Seth Nezat,**

**I , Seth Nezat** charged in a proceeding on a **Indictment filed in the Southern District of Ohio in violation of 18:U.S.C.§1962(d) Conspiracy To Participate In Racketeering Activity and** having been arrested in the **Southern District of Florida (Fort Lauderdale)** and taken before **United States Magistrate Judge Barry S. Seltzer**, for that district, who informed me of the charge and of my right to retain counsel or request the assignment of counsel if I am unable to retain counsel, and to have a removal hearing or execute a waiver thereof, do hereby waive a hearing before the aforementioned Magistrate Judge and consent to the issuance of a Warrant for my Removal to the **Southern District of Ohio** where the aforesaid charge is pending against me.

February 27th, 2019

_____
Signature of defendant

Barry S. Seltzer   - 2/27/19

**Barry S. Seltzer**
**United States Magistrate Judge (2/27/19)**

cc: All Counsel

UNITED STATES DISTRICT COURT FOR SOUTHERN DISTRICT OF FLORIDA **COURT ORDER/MINUTES**

U.S. MAGISTRATE JUDGE BARRY S. SELTZER - FORT LAUDERDALE, FLORIDA ROOM 110

DEFT: SETH NEZAT (J)#19691-104                    CASE NO: 19-6091-SELTZER

AUSA: (B. BROWN DUTY AUSA)                        ATTY:

USPO:                                              VIOL:
                                                       18:U.S.C.§1962(d)

PROCEEDING: INITIAL APPEARANCE ON REMOVAL        RECOMMENDED BOND:
            FROM SD OF OHIO

BOND/PTD HEARING HELD - yes / no                 COUNSEL APPOINTED:  FPD APPOINTED TIM DAY

BOND SET @:   NO BOND HEARING WAS HELD           To be cosigned by:

☐   All standard conditions                       **DEFENDANT ADVISED OF CHARGES. REQUEST COURT**

☐   Do not encumber property.                     **TO APPOINT COUNSEL. SWORN/TEST FOR COURT**

☐   Surrender and / or do not obtain passports / travel documents.   **APPOINTMENT OF COUNSEL FPD APPOINTED**

☐   Rpt to PTS as directed /  or_ x's a week/month by phone; _     **DEFENDANT DEFERS BOND HEARING UNTIL HIS RETURN**
    x's a week/month in person.

☐   Random  urine testing by Pretrial Services.  _____     **TO SOUTHERN DISTRICT OF OHIO.**
    Treatment as deemed necessary.

☐   Maintain or seek full - time employment.      **WAIVED REMOVAL AND SIGNED WAIVER**

☐   No contact with victims / witnesses.          **COURT FINDS GOOD CAUSE TO CONTINUE HEARING**

☐   No firearms.                                  **UNTIL HIS RETURN TO OHIO. COMMITMENT ORDER**

☐   Electronic Monitoring:                        **SIGNED. NO BOND HEARING WAS HELD IN OUR DISTRICT**

☐   Travel extended to:                           **(U.S. ATTORNEY MATTHEW SINGER APPEARED**

☐   Other:                                        **TELEPHONICALLY FROM OHIO)**

| NEXT COURT APPEARANCE: | DATE: | TIME: | JUDGE: | PLACE: |
|---|---|---|---|---|
| REPORT  RE COUNSEL: | | | | |
| PTD/BOND HEARING: | | | | |
| PRELIM/ARRAIGN OR REMOVAL: | | | | |
| STATUS RE EXTRADITION/HRG: | | | | |

DATE: **2/27/19**   TIME: **11:00 AM**   FTL/TAPE/#        Begin   **DAR:**
                                          BSS-

[25 MINS]
***THE TIME FROM TODAY THROUGH THE RE-SCHEDULED DATE IS EXCLUDED FROM THE DEADLINE FOR TRIAL AS
COMPUTED UNDER THE SPEEDY TRIAL ACT ****** YES OR NO DAR:11:05:45-11:27:04 RECALLED 11:35:06-11:37:40

AUSA: BRUCE BROWN

FILED
RICHARD W. NAGEL
CLERK OF COURT

2018 JUL 25 PM 3: 23

U.S. DISTRICT COURT
SOUTHERN DIST OHIO
WEST DIV CINCINNATI

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION**

UNITED STATES OF AMERICA          : CASE NO. **1:18CR 109**

                                  : JUDGE  **JUDGE BLACK**

          v.                      :

                                  : **SEALED INDICTMENT**

                                  : 18 U.S.C. § 1962(d)
                                  : Forfeiture Allegation

FILED BY ____AT____ D.C.

**Feb 26, 2019**

ANGELA E. NOBLE
CLERK U.S. DIST. CT
S. D. OF FLA. - FTL

                                  : OUR CASE NO: 19-6091-MJ-SELTZER

**SETH NEZAT,**
    a/k/a "Andrew Johnson,"
    a/k/a "Andrew Butler,"
    a/k/a "Jason,"
    a/k/a "Kyle Walker,"

          Defendants.            :

---

THE GRAND JURY CHARGES:

**COUNT ONE**
**(RICO Conspiracy)**

1

Case: 1:18-cr-00109-TSB Doc #: 85 Filed: 02/27/19 Page: 7 of 26 PAGEID #: 531

Case 0:19-mj-06091-BSS Document 5 Entered on FLSD Docket 02/27/2019 Page 5 of 24
Case 0:19-mj-06091-BSS Document 1 Entered on FLSD Docket 02/26/2019 Page 2 of 19

### Introduction

At times relevant to this Indictment:

1.      The U.S. Department of Transportation ("USDOT"), Federal Motor Carrier Safety Administration ("FMCSA"), monitors and enforces regulations governing safety and commerce for interstate motor carriers, to include federal regulations governing the transportation of household goods by licensed motor carriers (*i.e.*, movers).

2.      Federal regulations require all interstate motor carriers transporting household goods for individual shippers by motor vehicle to follow federal regulations relating to the interstate transportation of household goods.

3.      Under federal regulations, motor carriers who move household goods must be licensed and registered with the USDOT. To do so, each interstate motor carrier must first apply to operate as a motor carrier of household goods and receive a USDOT number.

4.      Federal forms that interstate motor carriers must complete to operate as movers of household goods include the OP-1 form, the MCSA-1 form, and the MCS-150 form, which are registration and information forms. The OP-1 form, the MCSA-1 form, and the MCS-150 form require that a representative for the interstate motor carrier certify that all information contained in the respective form is true and correct.

5.      Under federal regulations, the USDOT requires interstate motor carriers, among other things, to provide estimates of moving charges to potential customers in writing, indicating whether the estimate is a "binding" or "nonbinding" estimate.

6.      With a binding estimate, the customer and the motor carrier must both agree in writing to a charge for services prior to the start of any work. When an estimate is binding, USDOT prohibits the interstate carrier from raising the price of the move unless the interstate motor carrier and the customer re-negotiate the price prior to the commencement of the move. USDOT regulations

2

Case: 1:18-cr-00109-TSB Doc #: 85 Filed: 02/27/19 Page: 8 of 26 PAGEID #: 532

Case 0:19-mj-06091-BSS Document 5 Entered on FLSD Docket 02/27/2019 Page 6 of 24
Case 0:19-mj-06091-BSS Document 1 Entered on FLSD Docket 02/26/2019 Page 3 of 19

forbid interstate motor carriers from increasing the price of a move above the price set forth in a binding estimate after loading customers' household goods.

7.     Failure to meet USDOT requirements can result in a motor carrier being "placed out of service," which means the interstate motor carrier is no longer authorized under federal law to operate as a mover of household goods, and must cease operations.

8.     On or about October 31, 2008, JBR Underground, LLC, doing business as United National Moving and Storage, was authorized by USDOT to operate as a mover of household goods. USDOT ordered JBR Underground, LLC to cease operating as a mover of household goods on or about September 14, 2015.

9.     On or about September 19, 2014, National Relocation Solutions was authorized by USDOT to operate as a mover of household goods. USDOT ordered National Relocation Solutions to cease operating as a mover of household goods on or about October 26, 2015.

10.     On or about November 18, 2014, Independent Van Lines submitted an application to USDOT to operate as a mover of household goods; however, Independent Van Lines failed to comply with other USDOT requirements to obtain authority to operate. USDOT dismissed the application on or about April 27, 2015.

11.     On or about December 24, 2014, National Relocation Van Lines was authorized by USDOT to operate as a mover of household goods. USDOT ordered National Relocation Van Lines to cease operating as a mover of household goods on or about September 17, 2015.

12.     On or about September 18, 2015, US Relocation Systems was authorized by USDOT to operate as a mover of household goods. USDOT ordered US Relocation Systems to cease operating as a mover of household goods on or about June 14, 2016.

3

13.    On or about March 17, 2016, First National Moving and Storage was authorized by USDOT to operate as a mover of household goods. USDOT ordered First National Moving and Storage to cease operating as a mover of household goods on or about October 4, 2016.

14.    On or about August 17, 2016, Public Moving and Storage was authorized by USDOT to operate as a mover of household goods. USDOT ordered Public Moving and Storage to cease operating as a mover of household goods on or about July 3, 2017.

15.    On or about February 21, 2017, Public Moving Services was authorized by USDOT to operate as a mover of household goods. USDOT ordered Public Moving Services to cease operating as a mover of household goods on or about October 18, 2017.

16.    On or about July 3, 2017, Smart Relocation Solutions, a/k/a Presidential Moving Services, was authorized by USDOT to operate as a mover of household goods. USDOT ordered Smart Relocation Solutions, a/k/a Presidential Moving Services, to cease operating as a mover of household goods on or about March 19, 2018.

17.    On or about December 19, 2017, Unified Van Lines was authorized by USDOT to operate as a mover of household goods. USDOT ordered Unified Van Lines to cease operating as a mover of household goods on or about May 25, 2018.

18.    On or about April 26, 2018, Flagship Van Lines was authorized by USDOT to operate as a mover of household goods.

### The Racketeering Enterprise

19.    At times relevant to this Indictment, the defendants, ▮▮▮▮▮▮▮▮▮▮,



4

Case: 1:18-cr-00109-TSB Doc #: 85 Filed: 02/27/19 Page: 10 of 26 PAGEID #: 534

Case 0:19-mj-06091-BSS Document 5 Entered on FLSD Docket 02/27/2019 Page 8 of 24
Case 0:19-mj-06091-BSS Document 1 Entered on FLSD Docket 02/26/2019 Page 5 of 19

████████ ██████████████████████████████ in," and SETH NEZAT,

a/k/a "Andrew Johnson," "Andrew Butler," "Jason," "Kyle Walker," and others known and

unknown to the Grand Jury, operated and worked through the companies set forth in paragraphs 8

through 18 of the Indictment, namely, JBR Underground, LLC, United National Moving and Storage,

National Relocation Solutions, Independent Van Lines, National Relocation Van Lines, US

Relocation Systems, First National Moving and Storage, Public Moving and Storage, Public Moving

Services, Smart Relocation Solutions, Presidential Moving Services, Unified Van Lines, and

Flagship Van Lines, referred to collectively hereinafter as the "affiliated companies," as if they were

a single corporate entity.

20.    At times relevant to this Indictment, the defendants, and others known and unknown

to the Grand Jury, owned, operated, and worked as employees, members, and associates of the

affiliated companies to move interstate shipments of household goods.

21.    At times relevant to this Indictment, ████████ and ████████ coordinated and

directed lower-level employees, members, and associates of the affiliated companies.

22.    At times relevant to this Indictment, ████████ and ████████ operated the

affiliated companies out of multiple locations throughout the United States, including Florida, Ohio,

Maryland, North Carolina, Illinois, Texas, California, Connecticut, Colorado, and Missouri.

████████ and ████████ operated the affiliated companies principally out of a business address in

Hollywood, Florida. Starting on or about October 2015, ████████ and ████████ also operated

the affiliated companies out of a warehouse in West Chester, Ohio, which is located in the Southern

District of Ohio.

23.    The defendants, ████████████████ ██████████████ ████████

████████████ ██████████ " ████████ ; ████████

████████████ y ████████████████ ; ████████████ █████

5



and SETH NEZAT, a/k/a "Andrew Johnson", "Andrew Butler," "Jason," "Kyle Walker," and JBR Underground, LLC, United National Moving and Storage, National Relocation Solutions, Independent Van Lines, National Relocation Van Lines, US Relocation Systems, First National Moving and Storage, Public Moving and Storage, Public Moving Services, Smart Relocation Solutions, Presidential Moving Services, Unified Van Lines, and Flagship Van Lines, and others known and unknown to the Grand Jury, constituted an "Enterprise" as defined in Section 1961(4) of Title 18, United States Code, that is, a group of individuals and entities associated in fact that engaged in, and the activities of which affected, interstate and foreign commerce, referred to hereinafter as the "Moving Enterprise." The Moving Enterprise constituted an ongoing organization whose members functioned as a continuing unit for the common purpose of achieving the objectives and purposes of the Moving Enterprise.

### Purposes of the Enterprise

24.     The purposes of the Moving Enterprise included the following:

(a)     Enrich the Moving Enterprise and the owners, operators, employees, members, and associates of the Moving Enterprise by defrauding, extorting, and stealing from customers who hired affiliated companies of the Moving Enterprise to move their household goods.

(b)     Promote and perpetuate the Moving Enterprise and shield its criminal affairs from law enforcement authorities and customers by concealing the true owners, operators, employees, and operations of affiliated companies of the Moving Enterprise.

### The Racketeering Conspiracy

25.     Between in or about April 2013, and continuing through the date of this Indictment, in the Southern District of Ohio and elsewhere, the defendants,

6



," and **SETH NEZAT,**

a/k/a **"Andrew Johnson"**, **"Andrew Butler," "Jason," "Kyle Walker,"** and others known and

unknown to the Grand Jury, each being a person employed by, a member of, and associated with the

Moving Enterprise, an Enterprise engaged in, and the activities of which affected, interstate and

foreign commerce, together with others known and unknown to the Grand Jury, did knowingly and

intentionally conspire to conduct and participate, directly and indirectly, in the conduct of the affairs

of the Moving Enterprise through a pattern of racketeering activity, as defined in 18 U.S.C. § 1961(1)

and (5), consisting of multiple acts indictable under:

    (a)    18 U.S.C. § 1343 (relating to wire fraud) and § 2;

    (b)    18 U.S.C. § 659 (relating to the theft from interstate shipment) and § 2;

    (c)    18 U.S.C. § 1951(a) (relating to interference with commerce, robbery, or
        extortion) and § 2;

    (d)    18 U.S.C. § 1028(a) (relating to fraud and related activity in connection with
        identification documents) and § 2.

    26.    It was part of the conspiracy that each defendant agreed that a conspirator would

commit at least two acts of racketeering activity in the conduct of the affairs of the Moving Enterprise.

### Manner and Means of the Conspiracy

    27.    Among the manner and means employed by the members in conducting and

participating in the affairs of the Moving Enterprise were the following:

    (a)    It was part of the conspiracy that members of the Moving Enterprise

furthered the conspiracy by making false representations to the USDOT and employees of the

7

USDOT in order for the Moving Enterprise, through the affiliated companies, to operate as an interstate mover of household goods. This included misrepresentations to the USDOT that affiliated companies of the Moving Enterprise did not share common owners, operators, managers, and employees.

(b)     It was further part of the conspiracy that members of the Moving Enterprise caused counterfeit identification documents (including counterfeit drivers' licenses) to be produced, transferred, used, and possessed to conceal the leadership of affiliated companies of the Moving Enterprise.

(c)     It was further part of the conspiracy that, after customers complained to the USDOT about the criminal actions taken by the Moving Enterprise, members of the Moving Enterprise submitted documents to federal regulators containing misrepresentations in order to operate a new affiliated company of the Moving Enterprise as an interstate carrier of household goods.

(d)     It was further part of the conspiracy that members of the Moving Enterprise used aliases when working on behalf of affiliated companies of the Moving Enterprise to conceal their identities from law enforcement and customers.

(e)     It was further part of the conspiracy that members of the Moving Enterprise submitted fake reviews to online sources regarding services provided by affiliated companies of the Moving Enterprise to induce customers to choose the Moving Enterprise.

(f)     It was part of the conspiracy that members of the Moving Enterprise used wire communications, such as emails, to send false representations to customers and potential customers to induce customers to hire affiliated companies of the Moving Enterprise to move the customers' household goods.

(g)     It was part of the conspiracy that members of the Moving Enterprise

8

furthered the conspiracy by emailing to customers "binding" moving estimates without first conducting an on-site inspection of the household goods.

        (h)     It was further part of the conspiracy that binding estimates that members of the Moving Enterprise offered to customers were low so as to induce customers to hire the Moving Enterprise to move the customers' household goods.

        (i)     It was further part of the conspiracy that, after agreeing to a binding estimate and loading customers' household goods, members of the Moving Enterprise increased the cost of moves above the price agreed to in the binding estimate.

        (j)     It was further part of the conspiracy that, after agreeing to a binding estimate and loading customers' household goods, members of the Moving Enterprise falsely claimed that the customers' household goods took up more cubic footage than was set forth in the binding estimate.

        (k)     It was further part of the conspiracy that members of the Moving Enterprise misrepresented to customers the amount of actual cubic footage of household goods involved in moves.

        (l)     It was further part of the conspiracy that members of the Moving Enterprise knowingly charged customers for moving more cubic footage of household goods than was actually loaded by members of the Moving Enterprise, and others known and unknown to the Grand Jury.

        (m)     It was further part of the conspiracy that members of the Moving Enterprise tracked the "actual" and "real" cubic feet of space that household goods occupied during moves.

        (n)     It was further part of the conspiracy that members of the Moving Enterprise would send emails to each other containing documents detailing the "actual" and "real" cubic feet used during moves, along with documents detailing the cubic footage that was used to calculate the amount the Moving Enterprise charged to customers for the same moves.

        (o)     It was further part of the conspiracy that, at times, members of the Moving

9

Enterprise caused customers' household goods to be stolen while transporting the goods interstate by not delivering the household goods after loading the household goods and receiving payment for moving the household goods.

(p)     It was further part of the conspiracy that members of the Moving Enterprise extorted, and caused others known and unknown to the Grand Jury to extort, customers into paying money to the Moving Enterprise by increasing the cost of moves after loading customers' household goods and by refusing to relinquish customers' household goods until customers paid an inflated price for delivery of the household goods.

(q)     It was further part of the conspiracy that a member of the Moving Enterprise threatened to injure another person who interfered with the Moving Enterprise's purposes.

### Overt Acts

28.     In furtherance of the conspiracy and to achieve the illegal objective thereof, the following overt acts, among others, were committed in the Southern District of Ohio and elsewhere:

(a)     On or about June 5, 2014 ████████ filed an OP-1 form to the USDOT on behalf of National Relocation Solutions, LLC in which he certified falsely that he did not have any relationship with any other "FMCSA-regulated entity" within the past three years, despite his relationship with another FMCSA-regulated entity within the past three years.

(b)     On or about June 4, 2015, ████████ filed an OP-1 form to the USDOT on behalf of National Relocation Van Lines in which he certified falsely that he did not have any relationship with any other "FMCSA-regulated entity" within the past three years, despite his relationship with another FMCSA-regulated entity within the past three years.

(c)     On or about August 4, 2015, ████████ filed an OP-1 form to the USDOT on behalf of US Relocation Systems in which she certified falsely that she did not have any relationship with any other "FMCSA-regulated entity" within the past three years, despite her

10

relationship with another FMCSA-regulated entity within the past three years.

    (d)    On or about April 6, 2016, First National Moving and Storage provided documentation and payment to a third-party company for sales leads that was signed by ▅▅▅▅ and an individual ("Individual-1"). Included with the documents was a photocopy of a counterfeit driver's license, where the picture and information on the counterfeit driver's license matched the picture and information on a valid driver's license for ▅▅▅▅, but was actually in the name of Individual-1.

    (e)    On or about October 18, 2016, Public Moving and Storage provided documentation to a third-party company for sales leads that was signed by ▅▅▅▅ and another individual ("Individual-2"). Included with the documents was a photocopy of a counterfeit driver's license, in which the picture and information on the counterfeit driver's license matched the picture and information on a valid driver's license for a conspirator, but was actually in the name of Individual-2.

    (f)    On or about October 2, 2014, a member of the Moving Enterprise emailed a customer information about National Relocation Solutions, which referred falsely to being in business for 15 years.

    (g)    On or about June 19, 2015, a member of the Moving Enterprise emailed a customer regarding a move in Hamilton, Ohio information about National Relocation Van Lines, which stated falsely that National Relocation Van Lines was a family owned and operated company and had been in business since 1999.

    (h)    On or about January 22, 2016, a member of the Moving Enterprise emailed a customer regarding a move in Piscataway, New Jersey information about US Relocation Systems, referring falsely to being in business for 15 years.

    (i)    On or about October 25, 2017, the Internet webpage for First National

Moving and Storage stated falsely that First National Moving and Storage had 15 years of experience transporting household goods.

(j)     On or about October 25, 2017, the Internet webpage for Public Moving Services stated falsely that Public Moving Services had "more than 15 years of experience."

(k)     On or about October 25, 2017, the Internet webpage for Presidential Moving Services stated falsely that Presidential Moving Services had just celebrated its 20th anniversary.

(l)     On or about July 31, 2015, members of the Moving Enterprise, acting through National Relocation Solutions, loaded and caused others known and unknown to the Grand Jury to load a customer's household goods located in Hamilton, Ohio, which is in the Southern District of Ohio. Members of the Moving Enterprise increased the cost of the move above the binding estimate after household goods were loaded on the moving truck. Members of the Moving Enterprise charged the customer for using 2,177 cubic feet of space despite members of the Moving Enterprise knowing that the customer's household goods used only 1,350 cubic feet of space.

(m)     On or about November 5, 2015, members of the Moving Enterprise, acting through US Relocation Solutions, increased the cost of a customer's move above the binding estimate after the household goods were loaded. Members of the Moving Enterprise charged the customer for using 550 cubic feet of space despite members of the Moving Enterprise knowing that the customer's household goods used only 450 cubic feet of space. Members of the Moving Enterprise never delivered the customer's household goods despite taking possession of the household goods and receiving a down payment for delivery of the household goods.

(n)     On or about July 10, 2016, members of the Moving Enterprise, acting through First National Moving and Storage, loaded and caused others known and unknown to the Grand Jury to load a customer's goods to transport from Round Rock, Texas to Columbus, Ohio, which is located in the Southern District of Ohio. Members of Moving Enterprise increased the cost of the move

12

above the binding estimate after the household goods were loaded. A member of the Moving Enterprise also told the customer that the customer had to agree to the higher price or the customer's household goods would not be returned to her. The customer complained about the increased price during subsequent telephone calls from Columbus, Ohio to members of the Moving Enterprise. During one telephone call, a member of the Moving Enterprise told the customer that the Moving Enterprise would auction the customer's goods if the customer did not pay the higher price. Members of the Moving Enterprise charged the customer for using 800 cubic feet of space despite members of the Moving Enterprise knowing that the customer's household goods used only 500 cubic feet of space.

(o)     On or about May 24, 2016, members of the Moving Enterprise, through First National Moving and Storage, increased the cost of a move above the binding estimate after the household goods were loaded. When the customer requested that the movers unload the goods at the pickup site rather than pay the higher price, a member of the Moving Enterprise refused and told the customer that an additional payment was required for movers to unload the goods at the pickup site. Members of the Moving Enterprise charged the customer for using 4,150 cubic feet of space despite members of the Moving Enterprise knowing that the customer's household goods used only 3,300 cubic feet of space. Members of the Moving Enterprise never delivered the customer's household goods, which were stored at the Moving Enterprise's warehouse in West Chester, Ohio, despite taking possession of the household goods and receiving a down payment for delivery of the household goods.

(p)     On or about May 24, 2016, members of the Moving Enterprise, acting through First National Moving and Storage, loaded and caused others known and unknown to the Grand Jury to load a customer's goods to transport from Fort Wayne, Indiana to Middletown, Ohio, which is located in the Southern District of Ohio, and a storage unit. Members of the Moving

13

Enterprise increased the cost of the move above the binding estimate after loading household goods. Members of the Moving Enterprise charged the customer for using 1,600 cubic feet of space despite members of the Moving Enterprise knowing that the customer's household goods used only 1,200 cubic feet of space.

(q)     On or about August 7, 2015, members of the Moving Enterprise, acting through National Relocation Solutions, loaded and caused others known and unknown to the Grand Jury to load a customer's goods to transport from Mt. Vernon, Ohio, which is located in the Southern District of Ohio, to Mountain View, Arkansas. Members of the Moving Enterprise charged the customer for using 4,000 cubic feet of space despite members of the Moving Enterprise knowing that the customer's household goods used only approximately 3,000 cubic feet of space.

(r)     On or about June 8, 2016, members of the Moving Enterprise, acting through First National Moving and Storage, loaded and caused others known and unknown to the Grand Jury to load a customer's goods to transport from Panama City, Florida to Glenville, North Carolina. Members of the Moving Enterprise charged the customer for using 1,100 cubic feet of space despite members of the Moving Enterprise knowing that the customer's household goods used only 750 cubic feet of space.

(s)     On or about July 30, 2016, members of the Moving Enterprise, acting through First National Moving and Storage, loaded and caused others known and unknown to the Grand Jury to load loaded a customer's goods to transport from Monument, Colorado to Madison, Alabama. Members of the Moving Enterprise charged the customer for using 2,835 cubic feet of space despite members of the Moving Enterprise knowing that the customer's household goods used only 2,300 cubic feet of space.

(t)     On or about August 12, 2016, members of the Moving Enterprise, acting through First National Moving and Storage, loaded and caused others known and unknown to the

14

Grand Jury to load a customer's goods to transport from Walton, Kentucky to College Station, Texas. Members of the Moving Enterprise increased the cost of the move above the binding estimate after loading household goods. Members of the Moving Enterprise charged the customer for using 2,751 cubic feet of space despite members of the Moving Enterprise knowing that the customer's household goods used only 2,300 cubic feet of space.

(u)    On or about August 15, 2016, members of the Moving Enterprise, acting through First National Moving and Storage, loaded and caused others known and unknown to the Grand Jury to load a customer's goods to transport from Front Royal, Virginia to Golden, Colorado. Members of the Moving Enterprise charged the customer for using 1,700 cubic feet of space despite members of the Moving Enterprise knowing that the customer's household goods used only 1,300 cubic feet of space.

(v)    On or about August 21, 2016, members of the Moving Enterprise, acting through First National Moving and Storage, loaded and caused others known and unknown to the Grand Jury to load a customer's goods to transport from Steger, Illinois to Chandler, Arizona. Members of the Moving Enterprise charged the customer for using 2,800 cubic feet of space despite members of the Moving Enterprise knowing that the customer's household goods used only 2,300 cubic feet of space.

(w)    On or about June 16, 2017, members of the Moving Enterprise, through Public Moving Services, loaded and caused others known and unknown to the Grand Jury to load a customer's household goods to transport from Steilacoom, Washington to a storage facility in Clarksville, Tennessee. The customer made payments for the move and attempted to arrange delivery on multiple occasions. On or about October 12, 2017, the customer made arrangements with members of the Moving Enterprise to have the household goods delivered to the customer's new home in Tennessee. Members of the Moving Enterprise never delivered any of the customer's

15

household goods and never provided any explanation for not delivering the household goods.

(x)     On or about June 15, 2017, during a telephone call to a third-party company located in Maryland, ███████ threatened to blow up a building owned by the third-party company and shoot the third-party company's employees.

**All in violation of Title 18, United States Code, Section 1962(d).**

## FORFEITURE ALLEGATION

29.     The allegations contained in Count One of this Indictment are hereby incorporated by reference for the purpose of alleging forfeiture pursuant to the provisions of Title 18, United States Code, Section 1963, and Title 28, United States Code, Section 2461(c).

30.     Upon conviction of the offense set forth in Count One of this Indictment, the defendants, ████████████████████████ , ████████████████████,

████████████████ ," ██████████████████,

████████████████████████████ ,

██████████████████████████████ ,

████████████ , and **SETH NEZAT, a/k/a "Andrew Johnson," "Andrew Butler," "Jason," "Kyle Walker,"** shall forfeit to the United States, pursuant to 18 U.S.C. § 1963, including but not limited to:

(a)     any interest acquired or maintained in violation of 18 U.S.C. § 1962, which interests are subject to forfeiture to the United States pursuant to Title 18, United States Code, Section 1963(a)(1);

(b)     any interest in, security of, claim against, or property or contractual right of any kind affording a source of influence over, any enterprise which the

defendants established, operated, controlled, conducted, or participated in the conduct of, in violation of 18 U.S.C. § 1962, which interests, securities, claims, and rights are subject to forfeiture to the United States pursuant to Tile 18, United States Code, Section 1963(a)(2); and

(c)    any property constituting, or derived from, any proceeds obtained, directly or indirectly, from racketeering activity or unlawful debt collection in violation of 18 U.S.C. § 1962, which property is subject to forfeiture to the United States pursuant to Title 18, United States Code, Section 1963(a)(3);

including, but not limited to, all defendants' ownership interests in the companies listed as part of the enterprise and all property constituting proceeds and a sum of money equal to an amount that represents the proceeds that the defendants obtained as a result of the offense.

## SUBSTITUTE ASSETS

31.    If any of the property described above, as a result of any act or omission of the defendants:

(a)    cannot be located upon the exercise of due diligence;

(b)    has been transferred or sold to, or deposited with, a third party;

(c)    has been placed beyond the jurisdiction of the court;

(d)    has been substantially diminished in value; or

(e)    has been commingled with other property which cannot be divided without difficulty;

it is the intent of the United States, pursuant to 18 U.S.C. § 1963(m), to seek forfeiture of any other property of the defendants up to the value of the property described above.

All pursuant to Title 18, United States Code, Sections 1962, 1963(a)(1), (2), and (3), and (m).

A TRUE BILL.

GRAND JURY FOREPERSON

BENJAMIN C. GLASSMAN
UNITED STATES ATTORNEY

MATTHEW SINGER / MEGAN GAFFNEY
ASSISTANT UNITED STATES ATTORNEYS

18

EG

AO 442 (Rev. 11/11) Arrest Warrant

FILED
RICHARD W NAGEL
CLERK OF COURT

# UNITED STATES DISTRICT COURT

for the

Southern District of Ohio

2018 JUL 25 PM 3: 25

U.S. DISTRICT COURT
SOUTHERN DIST OHIO
WEST DIV CINCINNATI

| | | |
|---|---|---|
| United States of America | ) | |
| v. | ) | |
| SETH NEZAT, | ) | Case No.   1:18-cr-00109(12) |
| a/k/a "Andrew Johnson," a/k/a "Andrew Butler," | ) | |
| a/k/a "Jason," a/k/a "Kyle Walker" | ) | |
| | ) | |
| _____ | ) | |
| Defendant | | |

## ARREST WARRANT

To:   Any authorized law enforcement officer

**YOU ARE COMMANDED** to arrest and bring before a United States magistrate judge without unnecessary delay

*(name of person to be arrested)*   SETH NEZAT

who is accused of an offense or violation based on the following document filed with the court:

☑ Indictment   ☐ Superseding Indictment   ☐ Information   ☐ Superseding Information   ☐ Complaint
☐ Probation Violation Petition   ☐ Supervised Release Violation Petition   ☐ Violation Notice   ☐ Order of the Court

This offense is briefly described as follows:

18 U.S.C. § 1962(d) - Conspiracy to Participate in Racketeering Activity

[SEE ATTACHED INDICTMENT]

Date:   7/25/2018

*Issuing officer's signature*

City and state:   CINCINNATI, OHIO

Richard W. Nagel, Clerk, U.S. District Court
*Printed name and title*

| Return |
|---|
| This warrant was received on *(date)* _____ , and the person was arrested on *(date)* _____ at *(city and state)* _____ |
| Date: _____ |
| *Arresting officer's signature* |
| _____ |
| *Printed name and title* |

Case: 1:18-cr-00109-TSB Doc #: 85 Filed: 02/27/19 Page: 25 of 26 PAGEID #: 549

CM/ECF - Live Database - flsd
Case 0:19-mj-06091-BSS Document 5 Entered on FLSD Docket 02/27/2019 Page 1 of 2
Page 1 of 2

# U.S. District Court
## Southern District of Florida (Ft Lauderdale)
### CRIMINAL DOCKET FOR CASE #: 0:19-mj-06091-BSS All Defendants
### Internal Use Only

Case title: USA v. Nezat

Date Filed: 02/26/2019
Date Terminated: 02/27/2019

Assigned to: Magistrate Judge Barry S. Seltzer

**Defendant (1)**

**Seth Nezat**
19691-104
*YOB 1972 English*
*TERMINATED: 02/27/2019*
*also known as*
Andrew Johnson
*TERMINATED: 02/27/2019*
*also known as*
Andrew Butler
*TERMINATED: 02/27/2019*
*also known as*
Jason
*TERMINATED: 02/27/2019*
*also known as*
Kyle Walker
*TERMINATED: 02/27/2019*

represented by **Noticing FPD-FTL**
(954) 356-7436
Email: ftl_ecf@fd.org
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*
Designation: *Public Defender Appointment*

**Pending Counts**

None

**Disposition**

**Highest Offense Level (Opening)**

None

**Terminated Counts**

None

**Disposition**

**Highest Offense Level (Terminated)**

None

**Complaints**

**Disposition**

Case: 1:18-cr-00109-TSB Doc #: 85 Filed: 02/27/19 Page: 26 of 26 PAGEID #: 550
CM/ECF - Live Database - flsd
Case 0:19-mj-06091-BSS   Document 5   Entered on FLSD Docket 02/27/2019   Page 2 of 2

18:U.S.C.§1962(d)CONSPIRACY TO
PARTICIPATE IN RACKETEERING
ACTIVITY

**Plaintiff**

**USA**                                      represented by **Bruce Brown**
United States Attorney's Office
500 E Broward Boulevard
7th Floor
Fort Lauderdale, FL 33301-3002
954-356-7255X3514
Fax: 356-7336
Email: bruce.brown2@usdoj.gov
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*
Designation: Retained

| Date Filed | # | Docket Text |
|---|---|---|
| 02/26/2019 | 1 | Magistrate Removal of Indictment from SOUTHERN DISTRICT OF OHIO (WESTERN DIVISION) Case number in the other District 1:18-CR-00109 as to Seth Nezat (1). (at) (Entered: 02/26/2019) |
| 02/26/2019 | | Set Hearings as to Seth Nezat: Initial Appearance - Rule 5(c)(3)/40 set for 2/27/2019 AT 11:00 AM in Fort Lauderdale Division before FTL Duty Magistrate. (at) (Entered: 02/26/2019) |
| 02/26/2019 | | Arrest of Seth Nezat (at) (Entered: 02/27/2019) |
| 02/27/2019 | 2 | Minute Order for proceedings held before Magistrate Judge Barry S. Seltzer: Initial Appearance in Rule 5(c)(3)/Rule 40 Proceedings as to Seth Nezat held on 2/27/2019. Defendant waives removal and defers the bond hearing until arrival in charging district. Removal ordered. Attorney added: Noticing FPD-FTL for Seth Nezat (Digital 11:05:45) Signed by Magistrate Judge Barry S. Seltzer on 2/27/2019. (dd) (Entered: 02/27/2019) |
| 02/27/2019 | 3 | WAIVER of Rule 5(c)(3)/Rule 40 Hearing by Seth Nezat (dd) (Entered: 02/27/2019) |
| 02/27/2019 | 4 | COMMITMENT TO ANOTHER DISTRICT as to Seth Nezat. Defendant committed to District of SD/Ohio. Closing Case for Defendant. Signed by Magistrate Judge Barry S. Seltzer on 2/27/2019. *See attached document for full details.* (dd) (Entered: 02/27/2019) |